**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ELAINE HARVEY, ET AL.                                    CIVIL ACTION NO. 05-0561

VERSUS                                                              JUDGE S. MAURICE HICKS, JR.

TOYOTA MATERIAL HANDLING, USA,               MAGISTRATE JUDGE HORNSBY
INC., ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 23) filed

by the defendants, Toyota Industrial Equipment Manufacturing, Inc., Toyota Motor Sales

U.S.A., Inc., and Toyota Material Handling U.S.A., Inc.  The plaintiff, Elaine Harvey,

opposes the Motion for Summary Judgment.  <u>See</u> Record Document 35.  For the reasons

which follow, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN**

**PART**.

**I.     FACTUAL BACKGROUND.**[1]

Charles Harvey ("Mr. Harvey") was hired by SAIA Motor Freight Line, Inc. ("SAIA")

in the Shreveport terminal on February 4, 2004.  <u>See</u> Record Document 23, Exhibit A

(Deposition of John Ferguson) at 15.  At the time of his hiring, Mr. Harvey represented that

he had 12 years of previous forklift experience.  <u>See id.</u> at 17-18.  At SAIA, Mr. Harvey

underwent additional forklift training.  <u>See id.</u> at 18.

_____

[1]The defendants submitted a numbered Statement of Uncontested Facts.  <u>See</u>
Record Document 23-2.  In response, the plaintiff filed her Statement of Material Facts as
to Which There Exists a Genuine Issue of Material Fact, wherein she essentially lists four
issues as to which there is purportedly a genuine issue of material fact.  <u>See</u> Record
Document 35-3.  The plaintiff did not specifically dispute the defendants' 15 uncontested
material facts.  Thus, for purposes of the Factual Background section of the instant
Memorandum Ruling, the Court has closely mirrored the defendants' Statement of
Uncontested Facts.

On February 20, 2004, Mr. Harvey was involved in a fatal accident while operating a Toyota forklift to unload a trailer in SAIA's Shreveport terminal.   The accident was unwitnessed.   According to defendants, "for some reason, Mr. Harvey stood up, reached over the steering wheel and placed his entire upper torso, including his right arm and head, between the uprights of the mast of the forklift while the forklift was still running and the mast was raised."   Record Document 23-2 at ¶ 5.   Simply put, defendants maintain that Mr. Harvey intentionally maneuvered into the position of peril while plaintiffs argue that Mr. Harvey accidentally fell into such position.

Cal Pipkin ("Pipkin") recalled finding Mr. Harvey:

> They started inquiring about one of the guys were missing.  So -- they hadn't heard from him in a while, so they started look -- walking down one side of the dock and I started walking down the other.  And I get down to the next to the last trailer and I could hear the forklift running and I holler.  I say, "Here's the forklift down here."  I never walked to the back end of the trailer until I had called out and told them that the forklift -- I could hear it.
>     But I called his name. . . .  And I walked to the back of the trailer, and there he is.  Now, the only thing, when I looked and saw him between them -- them -- I want to call -- I always call them booms.  That bill was stuck in that, or he was looking for the name on something.  Why, I don't know, but his body was in between that boom, and I guess he couldn't reach or see exactly clearly, because his knee was up against that lever.
> . . .
>     It [the forklift] was not in gear.  It was in neutral because -- the reason I say it was in neutral, because it was just sitting. . . .
>     He was in there, but his arm was trying -- he had his arm behind him
> . . . .

Record Document 35, Exhibit (Pipkin Deposition) at 32, 34.   Charles Hammock ("Hammock")  also observed Mr. Harvey's body after the accident and stated that the forklift was still running, he could not see what gear the transmission was in, and Mr. Harvey was not seated and was not wearing his seatbelt.  See id., Exhibit (Hammock Deposition) at 44. When questioned about the positioning of Mr. Harvey's body, Hammock stated:

He was almost in the -- in the standing position where his -- his abdomen was over the top of the steering wheel itself. . . .  And then when I got there, both arms were just hanging down to his side. . . .  His -- his left was just right -- centered right in front of him, and his right leg was to the side.

Id. at 45.  Hammock also recalled that his right leg was contacting the control that controlled "the up and down part of the mast."  Id.  Photographs taken of the accident scene, including the position of Mr. Harvey's body, are included in the record as Exhibit C to Record Document 41.

The Toyota forklift[2] being operated by Mr. Harvey was equipped with a seatbelt, which Mr. Harvey was not using at the time of the accident.  See Record Document 23, Exhibit B at 45.  The forklift has a pictorial warning on the mast demonstrating the danger of placing a body part, namely the hand, within the mast.  See id., Exhibit C (Pictorial Warning).  Further, the Operator's and Owner's Manual supplied by Toyota with the subject forklift explained the significance of the aforementioned pictorial warning, stating:  "When you see it, stay clear."  Id., Exhibit D (Operator's and Owner's Manual) at 24.  The Operator's and Owner's Manual also contained the following warning:

**Stay Protected:**  Don't travel with legs, arms or head outside the overhead guard.  Watch for long objects that could come into the compartment as you travel.  Never put hands or feet through the upright.

Id. at 10.  Other warnings in the Operator's and Owner's Manual included:

**Operating Position:**  Operate the truck only when properly positioned -- never standing on the floor or leaning outside the operator's  compartment.

. . .

---

[2]While not made abundantly clear in the record, it appears that the Toyota forklift at issue in this case was manufactured in 2002.  See Record Document 35, Thomas Berry Affidavit (Exhibit 2 at 5).

> A specifically designed operator's seat and seat belt are provided for your
> safety.  Get in the habit of using the seat belt whenever you sit on the trucks.
>
> . . .
>
> **! WARNING**
> Always wear your seat belt when driving the truck.

Id. at 11, 39, & 40.  The Operator's and Owner's Manual repeatedly warned the operator

that staying in the seat and using the seat belt could reduce the risk of serious injury or

death.

On February 11, 2004, Mr. Harvey took a written test as part of his training at SAIA.

See id., Exhibit E (SAIA Forklift Training Test).  Part B of the test contained true - false

questions.  See id.  Question 03 stated:

> With modern, foolproof forklifts, it is safe to reach through the most [sic] from
> the driver's seat to adjust the load.

Id.  Mr. Harvey answered Question 03 with false, the correct response.  See id.  The test

also noted that it was "intended to help remind [the test taker] of the importance of safety

and the safety operating rules."  Id.

## II.    PROCEDURAL BACKGROUND.

On March 2, 2005, Elaine Harvey, individually and on behalf of two minor children,

filed a petition for damages in the First Judicial District Court, Caddo Parish.  See Record

Document 1.  In her wrongful death and survival action, the plaintiff asserted both defective

design and inadequate warning claims under the Louisiana Products Liability Act ("LPLA").

See id., ¶¶ 11-14.  The plaintiff named Toyota Industrial Equipment Manufacturing, Inc.,

Toyota Motor Sales U.S.A., Inc., and Toyota Material Handling U.S.A., Inc. as defendants

in her petition.  The defendants answered on July 18, 2005, raising both affirmative

defenses and denying certain portions of the petition.  See Record Document 14.

On March 29, 2005, SAIA filed an intervention in the First Judicial District Court, Caddo Parish, because of its position as Mr. Harvey's employer and a qualified self-insurer within the contemplation of the Louisiana Worker's Compensation Act.  See Record Document 5, ¶¶ 12-14.  The intervenor's complaint was answered by the defendants on March 12, 2007, again raising both affirmative defenses and denying certain portions of the complaint.  See Record Document 45.

The plaintiff amended her complaint on April 26, 2005 to also add Tokio Marine & Nichido Fire Insurance Co., Ltd. as a defendant.  See Record Document 20.  To date, the First Supplemental and Amended Petition for Damages has not been answered.

The defendants filed a Notice of Removal on March 29, 2005 and a Removal Order was entered on April 5, 2005.  See Record Documents 6 & 9.  On January 19, 2007, the defendants, Toyota Industrial Equipment Manufacturing, Inc., Toyota Motor Sales U.S.A., Inc., and Toyota Material Handling U.S.A., Inc., filed the instant Motion for Summary Judgment, seeking dismissal of all of the plaintiff's claims.  See Record Document 23.

## III.    LAW AND ANALYSIS.

### A.    Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d

26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential.  Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.

With these principles in mind, the Court now turns to a review of the claims at issue.

**B.    Louisiana Products Liability Act.**[3]

The LPLA governs this case.  The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."  La. R.S. 9:2800.52. Section 2800.54 of the LPLA states, in pertinent part:

A.      The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

B.      A product is unreasonably dangerous if and only if:

. . .

(2)    The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3)    The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

---

[3]Under Erie, this Court is bound to apply Louisiana substantive law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

> . . .
>
> C.   . . .  The characteristic of the product that renders it unreasonably
>     dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time
>     the product left the control of its manufacturer or result from a
>     reasonably anticipated alteration or modification of the product.
>
> D.   The claimant has the burden of proving the elements of Subsections
>     A, B and C of this Section.

La. R.S. 9:2800.54.  In this matter, the plaintiff has stated both design (Section 2800.56)

and inadequate warning (Section 2800.57) claims under the LPLA; however, before

reaching those claims, the Court must first determine if the damage in this case "arose

from a reasonably anticipated use" of the forklift.  La. R.S. 9:2800.54(A).

### 1.    Reasonably Anticipated Use.

The LPLA defines "reasonably anticipated use" as " a use or handling of a product

that the product's manufacturer should reasonably expect of an ordinary person in the

same or similar circumstances."  La. R.S. 9:2800.53(7).  In determining what constitutes

a reasonably anticipated use, courts must engage in an objective inquiry and "ascertain

what uses of its product the manufacturer should have reasonably expected at the time of

manufacture."  Kampen v. American Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998)

(citations omitted).    Under the LPLA's reasonably anticipated use standard, "a

manufacturer will not be responsible for every conceivable foreseeable use of a product."

Id. at 309-310 (citations and internal quotations omitted).

The Kampen court also discussed "reasonably anticipated use" in the context of

obvious danger and express warnings.  Citing Lockart v. Kobe Steel Ltd. Const. Machinery

Div., 989 F.2d 864 (5th Cir. 1993), the court stated:

> We thus read Lockart as a decision about the relationship between obvious

Page 8 of  19

danger and express warnings.  Lockart addresses the situation where a manufacturer provides an express warning cautioning against a use of the product for which the product was neither designed nor intended, and where the plaintiff acts in direct contravention of that warning. In that case, the plaintiff's "use" of the product will not be a reasonably anticipated one, unless, as Lockart itself observed, "the plaintiffs had presented evidence that despite the warnings, [the manufacturer] **should have been aware** that operators were using the [product] in contravention of certain warnings."

Kampen, 157 F.3d at 314 (emphasis added).

As stated previously in the Factual Background section of the instant Memorandum Ruling, the defendants maintain that Mr. Harvey intentionally maneuvered into the position of peril while the plaintiff contends that he accidentally fell into such position.  Yet, this Court finds that Mr. Harvey was engaged in a reasonably anticipated use regardless of whether he intentionally maneuvered or accidentally fell into the position of peril.  There is no dispute that Mr. Harvey was using the forklift to unload freight from a trailer – a use for which the forklift was specifically designed.  Thus, if the Court accepts the plaintiffs' argument that Mr. Harvey tripped and/or fell forward into the mast components, then the Court could easily find that Mr. Harvey was engaged in a reasonably anticipated use. Moreover, even if the Court assumes that Mr. Harvey intentionally reached into the mast, the Court finds that the plaintiff has come forward with competent summary judgment evidence establishing that the defendants' should have known that product users such as Mr. Harvey were using the forklift in direct contravention of certain warnings, namely: putting their hands or feet through the upright; operating the forklift only when properly positioned; never standing on the floor or leaning outside the operator's compartment; and always using the seat belt whenever sitting in or driving the forklift.  For instance, the plaintiff has presented Accident Search Detail reports from the online Occupational Safety

& Health Administration ("OSHA") database of workplace accidents that were compiled by her expert's company in 2001.  <u>See</u> Record Document 35, Thomas Berry Affidavit (Exhibits 4 & 5).  There are 25 OSHA Accident Search Detail reports involving accidental deaths or serious injuries to employees who were out of the seated operator position and in the area of the mast and a control was inadvertently activated.  <u>See id.</u>  Of those twenty-five incidents, seven involved the lowering of the mast and eleven involved deaths due to the operator being caught between the mast and the front of the overhead guard when the tilt control was inadvertently activated and the mast tilted back, crushing the operator.  <u>See id.</u>  The plaintiff also presented evidence that Toyota has admitted, in discovery responses in a previous case, that it was aware of accidents similar to Mr. Harvey's.  In discovery responses from Toyota Motor Sales, U.S.A., Inc. from the case of <u>William J. Frank, Personal Representative of the Estate of Daniel J. Frank, Deceased, Plaintiff vs. Toyota Motor Corporation, et al; Case No. 93-316113 NP; Circuit Court for the County of Wayne, Michigan, Toyota Motor Sales, U.S.A., Inc.,</u> Toyota identified three accidents similar to Mr. Harvey's which had occurred in 1977, 1985, and 1987.  <u>See id.</u>, Thomas Berry Affidavit (Exhibit 7).  Based on this evidence, the Court finds that the defendants, in light of readily available public information, including their own past discovery responses, should have known that forklift operators such as Mr. Harvey, regardless of their training, work experience, and specific warnings, were getting out of their seated operator position and then finding themselves at risk of being caught in the moving mast components of the forklift.  Simply put, the defendants should have known that users of their forklifts were using the forklift in contravention of warnings regarding putting their hands or feet through the upright; operating the forklift only when properly positioned; never standing on the floor

or leaning outside the operator's compartment; and always using the seat belt whenever sitting in or driving the forklift.  Accordingly, this Court finds as a matter of law that Mr. Harvey was engaged in a reasonably anticipated use of the forklift at the time of the February 2004 accident.

### 2.    Design Claim.

In her complaint, the plaintiff alleges:

The Toyota forklift was unreasonably dangerous in its design because at the time the Toyota Forklift left the defendants' control there existed an alternative design for the forklift that was capable of preventing Charles F. Harvey's injuries and death.  Specifically, the design alternatives available to the defendants herein include:

a)    the lift/lower control lever should have been guarded from inadvertent or accidental activation;

b)    the forklift should have been provided with an operator presence control which would lock the mast functions, and prevent the mast from lowering, if the operator was not seated on the forklift; and/or

c)    the forklift should have been provided with a large mesh screen or windshield enclosure on the front of the overhead guard posts or on the mast itself that would prevent access from the operator area.

Record Document 1, ¶ 11.  The plaintiff also alleges in her complaint that "the likelihood that the product's design when it left the control of the defendants herein would cause the injuries and damages sustained by Charles F. Harvey and the gravity of such injuries and damages outweighed any burden on the defendants herein and/or adverse effects to the utility of the forklift that might result from adopting such alternative designs."  Id., ¶ 12. With these allegations, the plaintiff is clearly invoking La. R.S. 9:2800.56, which states:

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

    (1)    There existed an alternative design for the product that was capable of preventing the claimant's damage; and

    (2)    The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 9:2800.56.

The defendants structured their Motion for Summary Judgment around the argument that Mr. Harvey was not engaged in a reasonably anticipated use of the forklift; thus, the plaintiff did not carry her initial burden of proof under the LPLA.[4]  The defendants performed no alternative analysis of the viability of the substantive merits of the design claim and such failure appears to be fatal to the request for summary judgment on the design claim.  While it is not necessary for the defendants to negate the elements of the plaintiff's design claim, they must at least demonstrate "the absence of a genuine issue of material fact."  Little, 37 F.3d at 1075.  Because of the structure of their Motion for Summary Judgment, the defendants' have failed to meet their initial burden as to the

---

[4]Interestingly, the defendants did engage in an alternative analysis for the inadequate warning claim:

> Assuming for arguments sake that the use by Mr. Harvey was reasonably anticipated by Toyota, because the danger was open and obvious and because he was a sophisticated user with 12 years of experience operating forklifts, plaintiffs' [sic] inadequate warnings claim must be dismissed.

Record Document 23-3 at 14. The defendants did not perform similar alternative analysis for the defective design claim.

design claim and the motion must be denied, regardless of the plaintiff's response in this case, because the burden has not shifted to the plaintiff to identify specific facts exist over which there is a genuine issue for trial.  See id. at 1075; Wallace, 80 F.3d at 1046-47. Accordingly, summary judgment must be denied as to the design claim.[5]

        **3.**      **Warning Claim.**

     The plaintiff also alleged in her complaint that the Toyota forklift was unreasonably dangerous because the defendants "knew or should have known that at the time the forklift left their control, the forklift possessed a dangerous characteristic capable of causing Charles F. Harvey's injuries and death and the defendants . . . failed to use reasonable care to provide an adequate warning of such characteristic and its danger to the users or handlers of the forklift."  Record Document 1, ¶ 13.  Specifically, she maintained that defendants should have provided appropriate instructions and warnings on the forklift and the accompanying manual; the warnings should have been affixed on the forklift in a location which would be visible to the operator; the warnings should have identified the potential hazard; and the warnings should have stated the level of risk and the precautions to be taken to avoid the hazard.  See id.  With these allegations, the plaintiff is invoking La. R.S. 9:2800.57(A), which states:

---

    [5]Moreover, the plaintiff in this case has come forward with expert evidence that an Operator Presence Sensing System, which stops all load handling operations in situations where the operator is separated and apart from the operator's seat, is now standard equipment on Toyota forklifts.  See Record Document 35, Affidavit of Thomas A. Berry at ¶ 12 (Exhibit 9).  While the plaintiff has not demonstrated when this potential feasible alternative design became available, she has at least presented expert evidence of an alternative design.  And again, the summary judgment burden in this case has not shifted to the plaintiff because the defendants did not demonstrate the absence of a genuine issue of material fact.

> A.     A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. R.S. 9:2800.57(A).[6]

Under Section 2800.57(B),[7] a manufacturer's duty to warn does not extend to dangers that are or should be obvious or common knowledge to the ordinary user or handler of the product.  See Ballam v. Seibels Bruce Ins. Co., No. 97-1444 (La.App. 4 Cir.

_____

[6]In her complaint, the plaintiff stated a claim under Section 2800.57(A), not (C), which states:

> C.     A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

The significance of the plaintiff's failure to assert a claim under Section 2800.57(C) will be discussed later in the instant Memorandum Ruling.

[7]Section 2800.57(B) states:

A manufacturer is not required to provide an adequate warning about his product when:

> (1)    The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

> (2)    The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

4/1/98),  712 So.2d 543, 550; Mallery v. International Harvester Co., No. 96-321 (La.App. 3 Cir. 11/6/96), 690 So.2d 765, 768.  This rule "is particularly so when the user is familiar with the product, making him a 'sophisticated user.'" Ballam, 712 So.2d at 550 (citation omitted).  "To be relieved of the duty to warn, the manufacturer need not show that the user had actual knowledge of the danger," but rather "need show only that the user should have known of the danger." Mallery, 690 So.2d at 768 (citations omitted).  Morever, Louisiana courts have presumed that so-called "sophisticated users" know about the danger because of their familiarity with the product. Id. (citations omitted); see also LaSalle v. Wilson Trailer Co., Inc., 2000-1731 (La.App. 3 Cir. 5/30/01), 787 So.2d 1173, 1178-1179; Morgan v. Gaylord Container Corp., 30 F.3d 586, 591 (5th Cir. 1994); and Gautreaux v. Tex-Steam Co., 723 F.Supp. 1181, 1182 -1183 (E.D.La. 1989).

The summary judgment evidence in this case clearly classifies Mr. Harvey as a sophisticated user of the forklift in question.  When hired, Mr. Harvey indicated he had almost 12 years of experience operating forklifts. See Record Document 23, Exhibit A at 17-18.  Mr. Harvey was also given additional training by SAIA regarding proper forklift use and safety.  Hammock, Mr. Harvey's supervisor, testified during his deposition as to such training:

> Q.  Okay.  And what – what was – what were you trained about wearing your seat belt?
>
> A.  The – the video itself stated, you know, that the safety precautions and requirements of not only OSHA, but the company, were operation of the forklift, you were in the seat, to fasten the seat belt and it was there for the reason if something happened, forklift went off the dock or you were in a trailer, it pulled away, if it come out, it would keep you in that forklift.

Record Document 23, Exhibit B at 15.  Hammock also testified that all forklift operators

were given a copy of the Operator's and Owner's Manual and that a copy of the manual was also kept in the office so that operators could refresh their use and safety procedures at any time.  See id. at 16.

Specifically, as to the danger of placing body parts into the mast, there is no dispute that the forklift itself was equipped with a warning sticker relaying the danger of placing any body part into the mast.  See id., Exhibit C.  Several of  Mr. Harvey's co-workers recalled seeing that sticker "right in front of you when you are sitting there" and understanding that it relayed information regarding the dangers of placing body parts into the mast.  See id., Exhibit H (Alvin Blanchard Deposition) at 14-15 & Exhibit I (Pipkin Deposition) at 29. Further, the co-workers stated that an operator really did not need a warning to recognize the danger of placing your body into the mast of the forklift.  See id.  They described the dangers of the mast as obvious in light of the training provided by SAIA and through common sense.  See id.  Moreover, it is undisputed that Mr. Harvey not only received but had  constant  access  to  the  Operator's  and  Owner's  Manual.   Such  manual  made  it abundantly clear that operators should operate the forklift only when properly positioned and should always use the seat belt whenever sitting in or driving the forklift.  The manual also repeatedly warned the operators that staying in the seat and using the seat belt could reduce the risk of serious injury or death.

Based on the aforementioned record evidence, this Court concludes that Mr. Harvey was a trained forklift operator and, in light of his experience, training, and common sense knowledge, should have known of the dangers inherent in not only failing to wear his safety belt, but also standing while the forklift was running, even if the forklift's transmission was in neutral.  Likewise, based on his experience, training, and common sense knowledge,

Mr. Harvey should have known the risks associated with failing to follow safety procedures in relationship to the mast, namely intentionally or accidentally entering the mast area and/or inadvertently activating the lever control while not properly seated and restrained by the safety belt in the operator's seat.   It is clear to the Court that the repeated admonitions in the Operator's and Owner's Manual that the operator should stay in the operator's seat and use the seat belt in order to reduce the risk of serious injury or death were meant to warn the operator that standing and moving about the operator's compartment while the forklift was running significantly increased the risk of serious injury or death.  Mr. Harvey should have known of these hazards, which were open and obvious to a sophisticated user with his years of experience and his very recent training.  In a case such as the instant matter, additional warnings, including those advocated by the plaintiff's expert in this case, would have only provided "a sophisticated operator with information which was already common knowledge among operators and with information he [was] presumed to know." Mallery, 690 So.2d at 768.  As a matter of law, the defendants had no duty to provide additional warnings to a forklift operator such as Mr. Harvey, who was familiar with the product and with the dangers arising from its use.  The record clearly evinces that Mr. Harvey knew safety and use procedures and that he knew to proceed with caution in light of the dangers inherent with not only the mast, but also with standing and moving about the operator's compartment while the forklift was running.  Accordingly, summary judgment in favor of the defendants is granted as to the plaintiff's inadequate warning claim under Section 2800.57(A).[8]

---

[8]In their briefs, both parties have focused on the alleged need for mast guards and/or the alleged need for a warning stating that a mast guard may be needed on a

## IV.    CONCLUSION.

For the reasons stated above, the Motion for Summary Judgment (Record Document 23) filed by the defendants is **GRANTED IN PART AND DENIED IN PART**.  The Court finds that Mr. Harvey was engaged in a reasonably anticipated use of the forklift at the time of the February 2004 accident; that there are genuine issues of material facts surrounding the design claim; and that summary judgment is appropriate as to the inadequate warning claim in light of Mr. Harvey's status as a sophisticated user and the open and obvious nature of the dangers presented in this case.

---

Toyota forklift.  Specifically, there is reference to "after market guards installed on forklifts at the Con-way Freight facility next door to SAIA's terminal."  Record Document 41 at 7.  According to the defendants, the plaintiff uses the Con-way Freight example as support for the argument that the defendants should have warned that mast guards were available and/or installed the mast guards.

In this case, it appears that the issue of the mast guard is relevant to the design claim in that the mast guard could be considered an alternative design for the forklift that may have been capable of preventing Mr. Harvey's death.  Yet, the Court finds that the mast guard issue is not relevant to the inadequate warning claim.  First, in light of the Court's ruling regarding Mr. Harvey's status as a sophisticated user and the open and obvious nature of the dangers in this case, the Court does not believe that an additional warning regarding the possible need for a mast guard was required.  More importantly, the Court agrees that the so-called mast guards appear to be an "after-market" add on to the forklift.  The plaintiff's expert himself stated that he "was aware that Con-way [Freight] had purchased guards from Toyota to be placed on the forklifts," which clearly suggests that the guards were an "after-market" add on.  Record Document 44 at 8, citing Thomas A. Berry Deposition at 29.  The plaintiff has not established the time frame of when Toyota began offering mast guards as an add on and has not demonstrated if the defendants' had knowledge of the alleged need for such guards at the time the forklift at issue in this case left their control.  And again, the Court notes that the plaintiff in this case did not state a claim under La. R.S. 9:2800.57(C).  Rather, she alleged in paragraph 13 of her complaint that "the defendants . . . knew or should have known that at the time the forklift left their control," not that the defendants acquired knowledge of the need for an adequate warning "after the product left [their] control."  Record Document 1, ¶ 13; La. R.S. 9:2800.57(A) & (C).

An order consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of April, 2007.

_S. Maurice Hicks_

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE